UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
Urbana Division

| | |
|---|---|
| **BLOOMINGTON PARTNERS, LLC,** a limited liability company, ) ) ) **Plaintiff,** ) v. ) ) **CITY OF BLOOMINGTON,** an Illinois municipal corporation, et al., ) ) ) **Defendants.** ) | Case No. 04-2287 |

## REPORT AND RECOMMENDATION

In December 2004, Plaintiff, Bloomington Partners, LLC, filed a Verified Complaint for Injunctive Relief (#1) against Defendant, City of Bloomington. In April 2005, Plaintiff filed a First Amended Complaint (#31) against Defendants City of Bloomington; John Butler, individually and d/b/a Butler Company, LLC; JB Butler Company, LLC; Michael Nelson; MNelson Company, LLC; Central Illinois Arena Management, Inc.; BNAM, LLC; Larry Hundman; and Thomas Hamilton. Federal jurisdiction is based on diversity pursuant to 28 U.S.C. § 1332.

In June 2005, Defendant Thomas Hamilton filed a Rule 12(b)(6) Motion To Dismiss Counts IV, V and VI of the First Amended Complaint (#52). After reviewing the parties' pleadings and memoranda, this Court recommends, pursuant to its authority under 28 U.S.C. § 636(b)(1)(B), that the Rule 12(b)(6) Motion By Defendant Thomas Hamilton To Dismiss Counts IV, V and VI of the First Amended Complaint **(#52)** be **DENIED.**

### I.  Background

The following background is taken from the complaint. At relevant times, Defendant Hamilton was City Manager for the City of Bloomington. Central Illinois Arena Management, Inc. (hereinafter "CIA") is a corporation wholly owned by Defendants Butler and Nelson. Defendant Butler is the only member of JB Butler Company, LLC (hereinafter "Butler LLC"). Butler LLC acted at all times solely through Butler. Nelson is the only member of MNelson

Company, LLC (hereinafter "MNelson LLC").  MNelson LLC acted at all times solely through Nelson.  Defendant Hundman is the chief operating officer of BNAM, LLC (also known as Bloomington-Normal Arena Management Group).

The City of Bloomington (hereinafter "City") has worked with Defendants Butler and Nelson since at least 2000 to bring a professional hockey team to the area and to plan, develop, and construct a sports arena to house the hockey franchise and cater other local entertainment events.  In 2003, the City and Butler and Nelson brought Barry Kemp, Richard Adams, and David LeFevre into this Arena Project.  In 2003, Adams, Kemp, LeFevre, Butler, and Nelson agreed among themselves to make a proposal to the City, in the name of a yet-to-be-formed partnership called Bloomington Partners, to manage the Arena Project, provide anchor tenants, furnish food and beverage concession equipment, and give financing guarantees for the Arena Project.  (#31, ¶ 25.)  This proposal was reduced to writing in the form of a Term Sheet and presented to the City for consideration in July 2003.  (#31, ¶¶ 26-27.)

During the first quarter of 2004, the participants in the proposed partnership ultimately reached agreement with the City on the terms of a contract.  (#31, ¶ 35.)  In early April 2004, the City's attorney asked LeFevre to prepare a final draft of the Arena Development and Management Agreement (hereinafter "Arena Agreement" or "Management Agreement").  (#31, ¶ 36.)  On April 27, 2004, Mayor Judy Markowitz signed the Arena Agreement on behalf of the City.  (#31, ¶ 40.)  Thereafter, the City obtained nearly $30,000,000 in general bond financing.  Construction of the sports arena began in August 2004.

On May 3, 2004, Kemp, LeFevre, and Adams formed Bloomington Partners (hereinafter "BP"), bringing in Defendants Butler and Nelson as additional members.  (#31, ¶ 41.)

On November 23, 2004, the City Council voted to terminate the agreement with BP.  On November 29, 2004, Defendants Butler and Nelson gave BP written notice that they were resigning their membership in BP.  On December 13, 2004, the City Council voted to enter into a new management and development agreement (the BNAM Agreement) with a third party named

2

Bloomington-Normal Arena Management Group (BNAM).  Butler and Nelson remained involved with the project.

Plaintiff BP's Arena Agreement with the City requires the parties to engage in good faith in dispute resolution procedures.  The City has ignored this requirement.  Plaintiff seeks injunctive relief requiring the City to engage in good faith in dispute resolution procedures as required by the agreement, and to enjoin the City from approving a new development and management agreement with a third party until the dispute resolution procedures are exhausted.

Plaintiff's first amended complaint alleges six counts, as follows:  (1) Count I, against the City, alleges breach of express contract; (2) Count II, against the City, alleges estoppel; (3) Count III, against Defendants Butler, Butler LLC, Nelson, and MNelson LLC, and CIA, alleges breach of fiduciary duty; (4) Count IV, against Defendants City, Hamilton, BNAM, and Hundman, alleges aiding and abetting; (5) Count V, against the City, Hamilton, Butler, Nelson, Butler LLC, MNelson LLC, CIA, Hundman, and BNAM, alleges intentional interference with contract; and (6) Count VI, against the City, Hamilton, Butler, Nelson, Butler LLC, MNelson LLC, CIA, Hundman, and BNAM, alleges intentional interference with economic expectations.

Plaintiff attached three documents to the complaint, including the Arena Agreement, dated April 27, 2004; the Consulting and Sales Agreement between the City of Bloomington and CIA, dated 2001; and the Pre-Opening Sales and Management (hereinafter "POSM") Agreement between the City and CIA, dated April 27, 2004.

In Counts IV, V, and VI, Plaintiff alleges that the City acted at all times through its manager, Hamilton; Hamilton had frequent contacts and dealings with Butler and Nelson on the full scope of their Arena Project activities; Hamilton and Hundman caused BNAM to enter into a development and management agreement with the City; and Hamilton and Hundman frequently communicated in secret with Butler and Nelson after April 27, 2004, about the status of BP's Arena Project activities and related matters and these secret communications were part of the activities that constituted Hamilton's aiding and abetting Butler and Nelson to breach their

fiduciary duties.  Hamilton and Hundman knew that BP had entrusted Butler and Nelson to act as BP's representatives and agents in matters concerning the Arena Agreement and Arena Project and knew that Butler and Nelson were engaging in misconduct by breaching their fiduciary duty to BP.  Hamilton and Hundman knew that Butler and Nelson wanted to and acted to deprive BP of revenues from its post-Arena Agreement activities, and wanted CIA to replace BP on Pre-Opening Services and as developer, consultant, and manager for the Arena Project.  Hamilton and Hundman actively aided and abetted Butler and Nelson in breaching their fiduciary duties and Hamilton profited in his relations with Butler, Nelson, and Hundman.

## II.  Standard

The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits of the case.  *Miller v. Reebie Storage and Moving Co., Inc.*, No. 93 C 3986, 1993 WL 414689, *1 (N.D. Ill. Oct. 15, 1993).  When considering a motion to dismiss, the Court must accept as true all well-pleaded factual allegations in the claim and draw all reasonable inferences in the light most favorable to the nonmoving party.  *Gutierrez v. Peters*, 111 F.3d 1364, 1368-69 (7th Cir. 1997).  The Court should dismiss the case only if the nonmoving party can prove no set of facts consistent with the allegations of the complaint that would entitle him to relief.  *Turner/Ozanne v. Hyman/Power*, 111 F.3d 1312, 1319-20 (7th Cir. 1997).

## III.  Analysis

Defendant Hamilton argues that the Court should dismiss the claims against him in Counts IV, V, and VI for the following reasons:  (1) He is protected by the provisions of the Local Governmental and Governmental Employees Tort Immunity Act (745 ILCS 10/1-101 *et seq*.) (hereinafter "Tort Immunity Act"); and (2) Plaintiff has failed to state claims in Counts V and VI.

### A.  Statutory Immunity

Defendant Hamilton first argues that the Court should dismiss the claims against him in Counts IV, V, and VI based on his immunity under Sections 2-201 and 2-204 of the Tort Immunity Act.  These provisions apply to both negligent and willful and wanton conduct.

*Vill. of Bloomingdale v. CDG Enters., Inc.*, 752 N.E.2d 1090, 1097-1101 (Ill. 2001); *In re Chi. Flood Litig.*, 680 N.E.2d 265, 273 (Ill. 1997).

Section 2-204 provides as follows: "Except as otherwise provided by statute, a public employee, as such and acting within the scope of his employment, is not liable for an injury caused by the act or omission of another person." 745 ILCS 10/2-204. Plaintiff contends that this Section only applies to claims that a defendant is vicariously liable for injuries caused by acts or omissions of another person. Based on the plain language of that statute, the Court agrees. Here, Plaintiff alleges that Defendant Hamilton is liable for the claims against him based on his own conduct, not that of other people. Therefore, Section 2-204 of the Tort Immunity Act does not immunize Hamilton from the claims in Counts IV, V, and VI.

Section 2-201 provides as follows: "Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused." 745 ILCS 10/2-201. Under this Section, an employee's conduct must constitute both an exercise of discretion and a policy determination for immunity to attach. *Harinek v. 161 North Clark St., Ltd.,* 692 N.E.2d 1177, 1182 (Ill. 1998). Policy determinations are "those decisions which require the municipality to balance competing interests and to make a judgment call as to what solution will best serve each of those interests." *Id.* at 1181 (citing *West v. Kirkham,* 588 N.E.2d 1104, 1109 (Ill. 1992)). Discretionary acts are those which are "unique to a particular office and involve the exercise of personal deliberation and judgment in deciding whether to perform an act and in what manner the act should be performed." *Birkett v. City of Chi.,* 758 N.E.2d 25, 31 (Ill. App. Ct. 2001).

In Count IV, Plaintiff specifically contends that Hamilton and Hundman aided and abetted Butler and Nelson by the following conduct: (1) they secretly planned for BNAM to take over BP's role in the Arena Agreement; (2) together with Butler and Nelson, they planned to assume control of development and management of the Arena Project before November 22, 2004; (3) they talked to Butler and Nelson prior to November 22, 2004, about replacing BP with

5

BNAM and they exchanged drafts of agreements, negotiated, and acted to accomplish BNAM's takeover of the Arena Project without telling BP; (4) they had actual knowledge that Butler and Nelson had not informed BP of the November 22, 2004, City Council vote to terminate the Arena Agreement and failed to inform BP of the vote; and (5) they negotiated a "hold harmless" agreement between the City and BNAM to immunize the City from any claims by Hundman in the event the BNAM Agreement was held to be invalid. In addition, (1) Hamilton gave Hundman a copy of BP's Arena Agreement prior to November 22, 2004, to enable Hundman to bid to replace BP as developer and manager of the Arena Project; (2) Hamilton unreasonably refused to accept BP's proposed pre-opening budget to create a pretext for the City to rescind BP's Arena Agreement; (3) Hamilton advised the City Council to rescind the BP Arena Agreement and to approve a management and development agreement with BNAM; (4) Hamilton asked the City Council to approve BNAM as a replacement for BP as manager and developer of the Arena Project; and (5) after April 2004, Hamilton concealed from BP that the City had entered into the POSM Agreement with CIA on the same date that the City entered into the Arena Agreement with BP.

In Count V, Plaintiff alleges that Hamilton, acting on his own behalf and on behalf of the City, engaged in misconduct as part of his scheme (along with Butler, Nelson, and Hundman) to intentionally interfere with the Arena Agreement between BP and the City. In Count VI, Plaintiff alleges that Hamilton and others intentionally engaged in misconduct as part of their scheme to interfere with the economic expectancy and business relationship between BP and the City and to cause the City to terminate its economic and business relationship with BP.

Defendant states that these alleged acts or omissions involved the determination of policy and the exercise of discretion as required by Section 10/2-201.

Plaintiff first responds that Defendant's argument is not properly raised pursuant to Rule 12(b)(6) because it is an affirmative defense. Dismissal under Rule 12(b)(6) based on an affirmative defense is generally not appropriate because a plaintiff is not required to anticipate

and attempt to plead around all potential defenses. *Xechem v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004). In addition, Plaintiff contends that Defendant Hamilton's acts were not discretionary because once the Council decided to approve the contract, Hamilton had the nondiscretionary duty to implement that contract. Instead, Hamilton acted to frustrate the contract and privately conspired with Butler and Nelson to replace BP.

It is not true that statutory immunity can never be raised in a motion to dismiss; an exception to the general rule regarding affirmative defenses applies when a plaintiff pleads facts that admit the validity of a successful defense. *Id.* Nevertheless, not every act undertaken by a municipal employee is protected by statutory immunity. Here, Defendant has failed to present any discussion, argument, or case law supporting his assertion that his conduct at issue constituted both a determination of policy and the exercise of discretion. These issues are often not clear-cut as demonstrated by the number of cases addressing the issues. Absent even a discussion of the issues, the Court declines to conclude at this stage of the proceedings that Defendant's conduct satisfied the requirements of the statute. *See In re Chinin USA, Inc.*, 327 B.R. 325, 336 (Bankr. N.D. Ill. 2005) (stating that the circumstances where an affirmative defense may be asserted as grounds for dismissal are very limited). Accordingly, the Court recommends denying the motion to dismiss Counts IV, V, and VI on the basis of statutory immunity.

### B. Failure To State Claims in Counts V and VI

Defendant next argues that Plaintiff has failed to state a claim for intentional interference with contract (Count V) because it failed to allege that Hamilton interfered with a contract between BP and a third party. *See Quist v. Bd. of Trs. Of Cmty. Coll. Dist. No. 525*, 629 N.E.2d 807, 811 (Ill. App. Ct. 1994) ("In order to maintain a cause of action for tortious interference with a contract or prospective contractual relationship, the tortfeasor must be a third party to the contractual relationship."). Similarly, Defendant contends that Plaintiff has failed to state a claim in Count VI. Specifically, Defendant contends that he is not a third-party to BP's expectation of a prospective contractual relationship with Hamilton's employer, the City of Bloomington. *Id.*

Plaintiff responds that (1) Hamilton is a third-party to the contract or the economic relationship between the City and Plaintiff because his actions show he has no identity of interest with his employer; (2) it need not plead that Defendant was acting out of self-interest because the Court can infer it (*see Mittelman v. Witous*, 552 N.E.2d 973, 987 (Ill. 1989), *abrogated on other grounds*, *Kuwik v. Starmark Star Mktg. & Admin., Inc.*, 619 N.E.2d 129, 135-36 (Ill. 1993)); and (3) whether a defendant has a unity of interest with his employer is a question of fact (*Cress v. Recreation Servs., Inc.*, 795 N.E.2d 817, 842-43 (Ill. App. Ct. 2003)).

A corporate officer's claim that he has a unity of interest with his employer for purposes of tortious interference with contract hinges on whether the officer was acting in the corporation's interest or in his own interest in inducing a breach of contract. *Cress*, 795 N.E.2d at 844. Here, in both counts, Plaintiff has alleged that Defendant Hamilton acted on his own behalf in addition to acting as a representative of the City.[1] In addition, Plaintiff alleged that Hamilton was close friends with Butler and Nelson (#31, ¶ 14) and that Hamilton profited in this relations with Butler, Nelson, and Hundman (#31, ¶ 105). Thus, Plaintiff alleged that Hamilton exploited his position as City Manager and acted in ways that were adverse to the City's benefit and for Hamilton's own benefit. At this point, the allegations are sufficient to indicate that Hamilton was acting in his own interest when he allegedly interfered with the contract or with Plaintiff's business expectation. Accordingly, the Court recommends denying the motion to dismiss the claim in Counts IV and V.

### IV.  Summary

For the reasons set forth above, this Court recommends that the Rule 12(b)(6) Motion By Defendant Thomas Hamilton To Dismiss Counts IV, V and VI of the First Amended Complaint **(#52)** be **DENIED**.

---

[1] Although Plaintiff uses the phrase "on behalf of the City," the Court infers that Plaintiff intends that phrase to indicate "as an agent of the City," rather than "for the benefit of the City."

The parties are advised that any objection to this recommendation must be filed in writing with the clerk within ten (10) working days afer being served with a copy of this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1).  Failure to object will constitute a waiver of objections on appeal.  *Video Views, Inc. v. Studio 21, Ltd.*, 797 F.2d 538, 539 (7th Cir. 1986).

ENTER this 22nd day of November, 2005.

                                                    s/ DAVID G. BERNTHAL
                                                    U.S. MAGISTRATE JUDGE