UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
**Urbana Division**

| | |
|---|---|
| **BLOOMINGTON PARTNERS, LLC,** ) <br> a limited liability company, ) <br> ) <br>             **Plaintiff,** ) <br>   v. ) <br> ) <br> **CITY OF BLOOMINGTON, an Illinois** ) <br> municipal corporation, et al., ) <br> ) <br>            **Defendants.** ) | Case No. 04-2287 |

## REPORT AND RECOMMENDATION

In December 2004, Plaintiff, Bloomington Partners, LLC, filed a Verified Complaint for Injunctive Relief (#1) against Defendant, City of Bloomington. In April 2005, Plaintiff filed a First Amended Complaint (#31) against Defendants City of Bloomington; John Butler, individually and d/b/a Butler Company, LLC; JB Butler Company, LLC; Michael Nelson; MNelson Company, LLC; Central Illinois Arena Management, Inc.; BNAM, LLC; Larry Hundman; and Thomas Hamilton. Federal jurisdiction is based on diversity pursuant to 28 U.S.C. § 1332.

In June 2005, Motion of Defendants BNAM, LLC and Larry Hundman To Dismiss Counts IV, V, and VI of Plaintiff's First Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) (#54) was filed. Defendants also filed an identical motion to dismiss that has been docketed as #55. After reviewing the parties' pleadings and memoranda, this Court recommends, pursuant to its authority under 28 U.S.C. § 636(b)(1)(B), that the Motion of Defendants BNAM, LLC and Larry Hundman To Dismiss Counts IV, V, and VI of Plaintiff's First Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) **(#54)** be **GRANTED in part** and **DENIED in part.** In addition, the Court recommends **STRIKING** the duplicate motion to dismiss docketed as **#55**.

## I. Background

The following background is taken from the complaint. At relevant times, Defendant Hamilton was City Manager for the City of Bloomington. Central Illinois Arena Management, Inc. (hereinafter "CIA") is a corporation wholly owned by Defendants Butler and Nelson. Defendant Butler is the only member of JB Butler Company, LLC (hereinafter "Butler LLC"). Butler LLC acted at all times solely through Butler. Nelson is the only member of MNelson Company, LLC (hereinafter "MNelson LLC"). MNelson LLC acted at all times solely through Nelson. Defendant Hundman is the chief operating officer of BNAM, LLC (also known as Bloomington-Normal Arena Management Group).

The City of Bloomington (hereinafter "City") has worked with Defendants Butler and Nelson since at least 2000 to bring a professional hockey team to the area and to plan, develop, and construct a sports arena to house the hockey franchise and cater other local entertainment events. In 2003, the City and Butler and Nelson brought Barry Kemp, Richard Adams, and David LeFevre into this Arena Project. In 2003, Adams, Kemp, LeFevre, Butler, and Nelson agreed among themselves to make a proposal to the City, in the name of a yet to be formed partnership called Bloomington Partners, to manage the Arena Project, provide anchor tenants, furnish food and beverage concession equipment, and give financing guarantees for the Arena Project. (#31, ¶ 25.) This proposal was reduced to writing in the form of a Term Sheet and presented to the City for consideration in July 2003. (#31, ¶¶ 26-27.)

During the first quarter of 2004, the participants in the proposed partnership ultimately reached agreement with the City on the terms of a contract. (#31, ¶ 35.) In early April 2004, the City's attorney asked LeFevre to prepare a final draft of the Arena Development and Management Agreement (hereinafter "Arena Agreement" or "Management Agreement"). (#31, ¶ 36.) On April 27, 2004, Mayor Judy Markowitz signed the Arena Agreement on behalf of the City. (#31, ¶ 40.) Thereafter, the City obtained nearly $30,000,000 in general bond financing. Construction of the sports arena began in August 2004.

On May 3, 2004, Kemp, LeFevre, and Adams formed Bloomington Partners (hereinafter "BP"), bringing in Defendants Butler and Nelson as additional members. (#31, ¶ 41.)

On November 23, 2004, the City Council voted to terminate the agreement with BP. On November 29, 2004, Defendants Butler and Nelson gave BP written notice that they were resigning their membership in BP. On December 13, 2004, the City Council voted to enter into a new management and development agreement (the BNAM Agreement) with a third party named Bloomington-Normal Arena Management Group (BNAM). Butler and Nelson remained involved with the project.

Plaintiff BP's Arena Agreement with the City requires the parties to engage in good faith in dispute resolution procedures. The City has ignored this requirement. Plaintiff seeks injunctive relief requiring the City to engage in good faith in dispute resolution procedures as required by the agreement, and to enjoin the City from approving a new development and management agreement with a third party until the dispute resolution procedures are exhausted.

Plaintiff's first amended complaint alleges six counts, as follows: (1) Count I, against the City, alleges breach of express contract; (2) Count II, against the City, alleges estoppel; (3) Count III, against Defendants Butler, Butler LLC, Nelson, and MNelson LLC, and CIA, alleges breach of fiduciary duty; (4) Count IV, against Defendants City, Hamilton, BNAM, and Hundman, alleges aiding and abetting; (5) Count V, against the City, Hamilton, Butler, Nelson, Butler LLC, MNelson LLC, CIA, Hundman, and BNAM, alleges intentional interference with contract; and (6) Count VI, against the City, Hamilton, Butler, Nelson, Butler LLC, MNelson LLC, CIA, Hundman, and BNAM, alleges intentional interference with economic expectations.

Plaintiff attached three documents to the complaint, including the Arena Agreement, dated April 27, 2004; the Consulting and Sales Agreement between the City of Bloomington and CIA, dated 2001 (hereinafter "CS Agreement"); and the Pre-Opening Sales and Management (hereinafter "POSM") Agreement between the City and CIA, dated April 27, 2004.

In Count IV, Plaintiff alleges that Hamilton and Hundman caused BNAM to enter into a development and management agreement with the City. Hamilton and Hundman frequently communicated in secret with Butler and Nelson after April 27, 2004, about the status of BP's Arena Project activities and related matters and these secret communications were part of the activities that constituted Hundman's aiding and abetting Butler and Nelson to breach their fiduciary duties. Hamilton and Hundman knew that BP had entrusted Butler and Nelson to act as BP's representatives and agents in matters concerning the Arena Agreement and Arena Project and knew that Butler and Nelson were engaging in misconduct by breaching their fiduciary duty to BP. Hamilton and Hundman knew that Butler and Nelson wanted to and acted to deprive BP of revenues from its post-Arena Agreement activities, and wanted CIA to replace BP on Pre-Opening Services and as developer, consultant, and manager for the Arena Project. Hamilton and Hundman actively aided and abetted Butler and Nelson in breaching their fiduciary duty and Hundman profited from the success of Butler and Nelson by receiving the BNAM Agreement. In Count V, Plaintiff alleges that Hundman, acting on his own and on behalf of BNAM, intentionally interfered with the Arena Agreement between BP and the City. In Count VI, Plaintiff alleges that Hundman, acting on his own and on behalf of BNAM, intentionally interfered with the business relationship between BP and the City.

## II. Standard

The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits of the case. *Miller v. Reebie Storage and Moving Co., Inc.*, No. 93 C 3986, 1993 WL 414689, *1 (N.D. Ill. Oct. 15, 1993). When considering a motion to dismiss, the Court must accept as true all well-pleaded factual allegations in the claim and draw all reasonable inferences in the light most favorable to the nonmoving party. *Gutierrez v. Peters*, 111 F.3d 1364, 1368-69 (7th Cir. 1997). The Court should dismiss the case only if the nonmoving party can prove no set of facts consistent with the allegations of the complaint that would entitle him to relief. *Turner/Ozanne v. Hyman/Power*, 111 F.3d 1312, 1319-20 (7th Cir. 1997).

### III.  Analysis

Defendants Hundman and BNAM argue that the Court should dismiss the claims against them in Counts IV, V, and VI for the following reasons:  (1) Plaintiff has failed to state a claim against Hundman individually; (2) neither Hundman nor BNAM owed any duty to Plaintiff, therefore, Plaintiff has failed to state a claim in Count IV; (3) in a previous order in this case, the Court held that no contract existed between Plaintiff and the City, so Plaintiff cannot state a claim for tortious interference with contract (Count V); (4) Plaintiff has failed to allege how either BNAM or Hundman tortiously interfered with Plaintiff's economic expectations (Count VI); and (5) Plaintiff has failed to allege a basis for punitive damages.

### A.  The Claims against Defendant Hundman Individually

Defendants first argue that Plaintiff has failed to state a claim against Hundman individually.  Specifically, Defendants contend that Plaintiff has not alleged the Hundman failed to follow corporate formalities so as to allow piercing of BNAM's corporate veil.

Plaintiff responds that it is seeking to hold Hundman liable for his own actions; it is not seeking to pierce the corporate veil and hold Hundman individually liable for the actions of BNAM.  *See Spartech Corp. v. Opper*, 890 F.2d 949, 953 (7th Cir. 1989) (stating that the principle of limited liability protects shareholders and officers of a corporation from "*derivative* liability, that is, from being called to account for the wrongs of the corporation.").

As Plaintiff points out, derivative liability or piercing the corporate veil is not the only grounds for imposing liability on a corporate officer.  The doctrine of limited liability does not protect a corporate officer from liability for his or her own wrongful acts.  *NPF WL, Inc. v. Sotka*, No. 99 C 7966, 2000 WL 574527, *4 (N.D. Ill. May 10, 2000) (citing *Spartech*, 890 F.2d at 953).  A review of the allegations in Counts IV, V, and VI indicates that they seek damages allegedly caused by Hundman's personal actions, as well as the actions of BNAM.  Therefore, the Court recommends denying the motion to dismiss the claims against Hundman individually.

### B.  The Claim of Aiding and Abetting (Count IV)

5

Defendants next argue that Plaintiff has failed to state a claim of aiding and abetting. Defendants address this argument in the context of aiding and abetting both breach of contract and breach of fiduciary duty, stating that it is difficult to tell which one Count IV alleges.

Plaintiff's response indicates that it is alleging a claim of "aiding and abetting a tortfeasor." *See Sanke v. Bechina*, 576 N.E.2d 1212, 1219 (Ill. App. Ct. 1991) (referring to aiding and abetting, based on Restatement (Second) of Torts § 876).

Regarding a claim for aiding and abetting a breach of contract, Defendants rely on *Montgomery v. Aetna Plywood, Inc.*, in which the Seventh Circuit court stated as follows: "[W]e have discovered no Illinois case recognizing a cause of action for aiding and abetting a breach of contract." *Montgomery v. Aetna Plywood, Inc.*, 231 F.3d 399, 413 n.6 (7th Cir. 2000). That note goes on to refer to Section 876 of the Restatement (Second) of Torts, which sets out a cause of action for, among other things, providing substantial assistance or encouragement to another's tortious acts. Because breach of contract is not a tort, the Court concludes that Plaintiff is not attempting to allege aiding and abetting breach of contract.

Regarding a claim for aiding and abetting a breach of fiduciary duty, Defendants contend that Plaintiff has failed to allege the elements of that tort, specifically, that BNAM or Hundman substantially assisted a breach of fiduciary duty. A claim of aiding and abetting includes the following elements: (1) The party whom the defendant aids must perform a wrongful act which causes an injury; (2) the defendant must be generally aware of his role as part of the overall or tortious activity at the time that he provides the assistance; and (3) the defendant must knowingly and substantially assist the principal violation. *Wolf v. Liberis*, 505 N.E.2d 1202, 1208 (Ill. App. Ct. 1987).

Here, Plaintiff has alleged Defendants Hamilton and Hundman were aware that Butler and Nelson owed Plaintiff a duty of loyalty, trust, and confidence and that Butler and Nelson's

6

conduct breached their fiduciary duties to Plaintiff.  Thus, Plaintiff has adequately alleged the first two elements of the claim.

As to the third element, Plaintiff specifically contends that Hamilton and Hundman aided and abetted Butler and Nelson by the following conduct:  (1) they secretly planned for BNAM to take over BP's role in the Arena Agreement; (2) together with Butler and Nelson, they planned to assume control of development and management of the Arena Project before November 22, 2004; (3) they talked to Butler and Nelson prior to November 22, 2004, about replacing BP with BNAM and they exchanged drafts of agreements, negotiated, and acted to accomplish BNAM's takeover of the Arena Project without telling BP; (4) they had actual knowledge that Butler and Nelson had not informed BP of the November 22, 2004, City Council vote to terminate the Arena Agreement and failed to inform BP of the vote; and (5) they negotiated a "hold harmless" agreement between the City and BNAM to immunize the City from any claims by Hundman in the event the BNAM Agreement was held to be invalid.

Based on notice pleading standards, Plaintiff has alleged enough to survive a motion to dismiss on the basis of failure to allege  "substantial assistance."

Defendants also contend that Plaintiff failed to state a claim because BNAM and Hundman did not owe Plaintiff any duty.  *See Shapo v. Engle*, No. 98 C 7909, 1999 WL 1045086, *19 (N.D. Ill. Nov. 12, 1999) (stating that, to state a claim of aiding and abetting a breach of fiduciary duty, a plaintiff must allege that a defendant facilitated an underlying tortious act against a third party by another, and that the defendant's substantial assistance in accomplishing the tortious result itself constitutes a breach of duty to that third person).

Plaintiff responds that aiding and abetting liability is predicated on the defendant's encouragement and assistance to another to commit a tort, not on any independent duty that the defendant owes the plaintiff.  As Plaintiff points out, Defendants' interpretation would eliminate the need for the tort of aiding and abetting because the plaintiff could state a claim for direct

breach of the duty. The Court agrees. Section 876 of the Restatement (Second) of Torts, provides, in pertinent part, as follows:

> § 876. Persons Acting in Concert
>
> For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he
>
> (a) does a tortious act in concert with the other or pursuant to a common design with him, or
>
> (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or
>
> (c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.

Restatement (Second) of Torts § 876 (1979). Subparagraph (b) refers to a duty by the one who is being aided ("the *other's* conduct constitutes a breach"), not the one who is aiding the tortfeasor.

After considering the Restatement (Second) of Torts § 876(b) and case law regarding aiding and abetting, the Court concludes that the claim of aiding and abetting a breach of fiduciary duty does not require that a defendant owed a plaintiff an independent duty. Accordingly, the Court concludes that Plaintiff has adequately alleged a claim of aiding and abetting a breach of fiduciary duty and recommends denying the motion to dismiss Count IV for failure to state a claim.

### C. The Claim for Tortious Interference with Contract (Count V)

Defendants next argue that Plaintiff cannot state a claim for tortious interference with contract based on the doctrine of the law of the case. In a previous order addressing Plaintiff's motion for temporary restraining order, the Court stated that, "based upon the plain language contained in the Management Agreement, . . . the Management Agreement never became an enforceable agreement between the parties [(BP and the City)]." (Order, #29, p. 14.) The absence of an agreement is fatal to a claim of tortious interference with contract. *See Cress v. Recreation Servs., Inc.*, 795 N.E.2d 817, 842 (Ill. App. Ct. 2003) (stating that the elements of a

claim include (1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of the contractual relationship between the plaintiff and another; (3) the defendant's intentional and unjustifiable inducement of a breach of the contract; (4) a breach of contract by the other caused by the defendant's wrongful acts; and (5) damage to the plaintiff).

Plaintiff responds that the law of the case doctrine does not prohibit a court from reconsidering findings and conclusions from a preliminary injunction hearing. *Loewen Group Int'l, Inc. v. Haberichter*, 93 C 7377, 1998 WL 603040, *2 (N.D. Ill. Sept. 4, 1998) ("The findings and conclusions for preliminary injunction are, by their nature, preliminary."). Furthermore, Plaintiff contends that the allegations of the complaint sufficiently allege that the Arena Agreement was a valid and enforceable contract between BP and the City.

In considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court is limited to the allegations contained in the pleadings. *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993). Pleadings include the complaint, the answer, and any written instruments attached as exhibits, such as affidavits, letters, contracts, and loan documentation. *N. Ind. Gun & Outdoor Shows, Inc.*, 163 F.3d 449, 452 (7th Cir. 1998). In addition, the Court may take judicial notice of other court proceedings if the proceedings are directly related to the case. *Scholes v. Lehmann*, 56 F.3d 750, 762 (7th Cir. 1995).

With these standards in mind, the Court notes that the order on the motion for preliminary injunction concluded that the Arena Agreement (referred to in the order as the Management Agreement) never became an executed, enforceable contract. This conclusion was based on the plain language of the Management Agreement and the provisions of the CS Agreement and the POSM Agreement. The Management Agreement (attached to the first amended complaint as Exhibit B) indicates that BP never executed that agreement.

Without repeating the entire analysis from the previous order in this case, this Court notes that, consistent with the reasoning in the previous order, Plaintiff's allegations that the

Arena Agreement constituted a valid enforceable agreement between BP and the City are not well-pleaded in light of the evidence provided by the attachments. As a result, the Court concludes that Plaintiff has failed to state a claim for tortious interference with contract in Count V and recommends granting Defendants' motion to dismiss Count V.

### D. The Claim for Tortious Interference with Economic Expectations (Count VI)

Defendants next argue that Plaintiff has failed to state a claim for tortious interference with Plaintiff's economic expectations. Apparently, Defendants contend that Plaintiff has failed to allege (1) the elements of a claim as to Hundman and BNAM, or (2) that BNAM and Hundman acted with actual malice. In addition, Defendants state that BNAM is not even mentioned in Count VI, except in the prayer for relief.

With regard to the latter argument, the Court notes that Plaintiff alleged that Hundman acted on his own behalf and on behalf of his entity, BNAM. *See Jansen v. Packaging Corp. of Am.,* 123 F.3d 490, 495 (7th Cir. 1997) (stating that a corporation can only act through its employees and agents). Thus, Plaintiff has alleged conduct by BNAM. As for the argument that Plaintiff failed to allege malice, the Court notes that Paragraph 110 of Count VI alleges as follows: "Butler, Nelson, Hamilton, and Hundman intentionally engaged in the aforementioned misconduct in a willful, wanton, and malicious manner." (#31, ¶ 110.)

In support of their argument that Plaintiff failed to allege the elements of the claim, Defendants list the elements of a claim for tortious interference with economic expectations, quote two cases, restate their premise that the Court should dismiss the claim, and finish off with this statement:

> Furthermore, there is no contract between BP and the City that prohibited BNAM from entering into a contract with the City and, as a result, pursuant to the rationale set forth in *Frandsen*, BNAM committed no tort when it signed a contract with the City. Competition is not a tort.

(#56, p. 10.)

Defendants have not explained which elements Plaintiff has failed to allege. Certainly Defendants could not be suggesting that Plaintiff failed to allege all of the elements, because the

complaint clearly alleges, at a minimum, the existence of its economic expectations from the City and that Hundman's conduct was willful, wanton, and malicious. As the Seventh Circuit stated in the appellate context, "[i]t is not enough for an appellant in his brief to raise issues; they must be pressed in a professionally responsible fashion." *Pearce v. Sullivan*, 871 F.2d 61, 64 (7th Cir. 1989). Accordingly, the Court recommends denying the motion to dismiss Count VI.

### E.  Punitive Damages

Defendants also argue that Plaintiff has failed to allege a basis for punitive damages. Specifically, Defendants argue that Plaintiff has failed to allege a basis for its conclusory allegations that Hundman's conduct was "willful, wanton, and malicious." (Count V, ¶ 109; Count VI, 110.)

In a suit in federal court where federal jurisdiction is based on diversity, state law determines whether punitive damages are appropriate. *Ross v. Black & Decker, Inc.*, 977 F.2d 1178, 1187 (7th Cir. 1992) (citing *West v. W. Cas. & Sur. Co.*, 846 F.2d 387, 398 (7th Cir. 1988)). In Illinois, punitive damages may be awarded when the defendant acted with fraud, actual malice, deliberate violence or oppression, or when the defendant acted willfully, or with such gross negligence as to indicate a wanton disregard for the rights of others. *Id*. Furthermore, "[w]ilful and wanton conduct is that which usually approaches the degree of moral blame attached to intentional harm, since the defendant deliberately inflicts a highly unreasonable risk of harm upon others in conscious disregard of that risk." *Homewood Fishing Club v. Archer Daniels Midland Co.*, 605 N.E.2d 1140, 1148 (Ill. App. Ct. 1992).

In Count VI, Plaintiff has expressly alleged that Hundman acted in a willful, wanton, and malicious manner. (#31, ¶ 110.) Furthermore, Plaintiff alleged that Hundman intentionally interfered with BP's economic expectations with the City. Accordingly, the Court recommends denying the motion to dismiss the claim for punitive damages in Count VI.

In Count IV, Plaintiff has not expressly alleged that Hundman acted in a willful,

malicious, or oppressive manner. However, Plaintiff has alleged that Hundman knew about the breach of fiduciary duty by Butler and Nelson, worked secretly and intentionally with them to replace BP as developer and manager of the Arena Project, actively aided and abetted Butler and Nelson's activities, and profited from their success. Accordingly, the Court recommends denying the motion to dismiss the request for punitive damages in Count IV.

### IV. Summary

For the reasons set forth above, this Court recommends that the Motion of Defendants BNAM, LLC and Larry Hundman To Dismiss Counts IV, V, and VI of Plaintiff's First Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) **(#54)** be **GRANTED** as to Count V; and **DENIED** as to Count IV, Count VI, the claims against Hundman individually, and the requests for punitive damages in Counts IV and VI. In addition, the Court recommends **STRIKING** the Motion of Defendants BNAM, LLC and Larry Hundman To Dismiss Counts IV, V, and VI of Plaintiff's First Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) **(#55).**

The parties are advised that any objection to this recommendation must be filed in writing with the clerk within ten (10) working days afer being served with a copy of this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1). Failure to object will constitute a waiver of objections on appeal. *Video Views, Inc. v. Studio 21, Ltd.*, 797 F.2d 538, 539 (7th Cir. 1986).

ENTER this 23rd day of November, 2005.

s/ DAVID G. BERNTHAL
U.S. MAGISTRATE JUDGE