UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

---

| | |
|---|---|
| **BLOOMINGTON PARTNERS, LLC, a limited liability company,** ) ) ) **Plaintiff,** ) ) v. ) ) **CITY OF BLOOMINGTON, an Illinois municipal corporation; JOHN BUTLER, individually and d/b/a BUTLER COMPANY, LLC; JB BUTLER COMPANY, LLC; MICHAEL NELSON; MNELSON COMPANY, LLC; CENTRAL ILLINOIS ARENA MANAGEMENT, INC.; BNAM, LLC; LARRY HUNDMAN; and THOMAS HAMILTON,** ) ) ) ) ) ) ) ) ) ) ) ) **Defendants.** ) | Case No. 04-CV-2287 |

**OPINION**

On November 22, 2005, the Magistrate Judge filed a Report and Recommendation (#66) in this case which recommended denying the Motion to Dismiss (#52) filed by Defendant Thomas Hamilton. On December 8, 2005, Defendant Hamilton filed his Objection to Report and Recommendation (#72). Plaintiff filed an Answer to the Objection (#73) on December 12, 2005. Following this court's careful and thorough de novo review, this court agrees with Defendant Hamilton that he is immune from liability under the Illinois Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act), 745 Ill. Comp. Stat. 10/1-101 et seq. (West 2004). Accordingly, the claims against Hamilton in Counts IV, V, and VI of Plaintiff's First Amended Complaint (#31) must be dismissed, and Hamilton's Motion to Dismiss Counts IV, V and VI of the First Amended Complaint (#52) is therefore GRANTED.

On November 23, 2005, the Magistrate Judge filed a Report and Recommendation (#67)

which recommended granting in part and denying in part the Motion to Dismiss Counts IV, V and VI of Plaintiff's First Amended Complaint (#54) filed by Defendants BNAM, LLC (BNAM) and Larry Hundman. Defendants BNAM and Hundman did not file any objections to the portion of the Report and Recommendation which recommended denying, in part, their Motion to Dismiss. Accordingly, that portion of the Report and Recommendation is accepted by this court. See Video Views, Inc. v. Studio 21, Ltd, 797 F.2d 538 (7th Cir. 1986). However, on December 7, 2005, Plaintiff filed its Objection to Report and Recommendation (#68). Defendants BNAM and Hundman have not filed a timely response to the Objection. Following this court's careful and thorough de novo review, this court agrees with Plaintiff that Count V should not be dismissed based upon the "law of the case." Accordingly, the Motion to Dismiss (#54) is denied in its entirety.

## I.  HAMILTON'S MOTION TO DISMISS

In its First Amended Complaint (#31), Plaintiff alleged, in Count IV, that the City of Bloomington (City), Hamilton, Hundman and BNAM are liable for monetary damages for aiding and abetting Defendants John Butler and Michael Nelson in breaching their fiduciary duties to Plaintiff. Plaintiff alleged that Hamilton and Hundman had secret meetings with Butler and Nelson and that Hamilton, the City's manager, caused the City to rescind its Arena Agreement with Plaintiff and enter into an agreement with an entity controlled by Hundman, BNAM. Plaintiff alleged that, in addition, Hamilton unreasonably refused to accept Plaintiff's proposed Pre-Opening budget in order to create a pretext for the City to rescind its agreement with Plaintiff and took various other actions which resulted in the City entering into agreements which were favorable to Butler and Nelson and unfavorable to Plaintiff. Plaintiff alleged that Hamilton knew that Butler and Nelson owed a fiduciary duty to Plaintiff and aided and abetted their breach of that duty.

In Count V, Plaintiff alleged that Hamilton, acting on his own behalf and on behalf of the City, engaged in misconduct as part of his scheme (along with Butler, Nelson, and Hundman) to intentionally interfere with the Arena Agreement between the City and Plaintiff. In Count VI, Plaintiff alleged that Hamilton and others intentionally engaged in misconduct as part of their scheme to interfere with the economic expectancy and business relationship between the City and Plaintiff and to cause the City to terminate its economic and business relationship with Plaintiff. In both Count V and Count VI, Plaintiff sought monetary damages for unreimbursed expenses and loss of profits and business opportunities.

In his Motion to Dismiss (#52), Hamilton argued that he had absolute immunity from liability based upon § 2-201 and § 2-204 of the Tort Immunity Act. Hamilton relied upon Village of Bloomingdale v. CDG Enterprises, Inc., 752 N.E.2d 1090, 1097-1101 (Ill. 2001). The Magistrate Judge, in his Report and Recommendation, first accepted Plaintiff's argument that § 2-204 of the Tort Immunity Act did not immunize Hamilton because Plaintiff alleged that Hamilton was liable based upon his own conduct, not that of other people. In the Report and Recommendation, the Magistrate Judge also determined that dismissal based upon § 2-201 was not appropriate because Hamilton "failed to present any discussion, argument, or case law supporting his assertion that his conduct at issue constituted both a determination of policy and the exercise of discretion."

As noted, Hamilton filed a timely Objection to the Report and Recommendation. Hamilton contended that, although his motion to dismiss was not argued as well as it should have been, a review of the Bloomingdale case made clear that "allegations involving interference with contract and interference with economic expectation claims are matters involving the determination of policy and the exercise of discretion." Hamilton argued that, as a matter of law, he is immune from liability

3

under the Tort Immunity Act for all of Plaintiff's theories. Plaintiff responded to the Objection and argued that, in its First Amended Complaint, it adequately pled "that Hamilton acted on behalf of the private interests of defendants John Nelson and Michael Butler rather than on behalf of the City of Bloomington" so that Hamilton did not engage in his activities in the process of "determining policy" or "exercising discretion."

The parties do not dispute that Illinois law applies in this case. Section 2-201 of the Tort Immunity Act provides:

> Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused.

745 Ill. Comp. Stat. 10/2-201 (West 2004).

In Village of Bloomingdale, CDG Enterprises (CDG) alleged that it was the contract purchaser of five parcels of land adjacent to the Village of Bloomingdale (Village). CDG petitioned the Village's planning commission to annex the five parcels and rezone them so that CDG could build a subdivision on the parcels. Village of Bloomingdale, 752 N.E.2d at 1094. CDG alleged that its representatives met with the Village's land planner and other officials, including the mayor, who allegedly told CDG that the project would be approved. CDG further alleged as follows:

> [The Village] secretly formed a "task force" in order to pursue the acquisition and development of a golf course, which was adjacent to the five parcels; commissioned Planning Resources, Inc., the

>  Village's consultant in charge of reviewing CDG's petition, to prepare a plan to redesign the golf course so that some of the holes would be on the property CDG intended to acquire; and secretly met with other individuals to create opposition to CDG's plan. In August 1995, the Village's planning commission voted down CDG's project, with the chairman allegedly pressuring other members to vote against it. Then, in October 1995, the Village's board of trustees voted down CDG's petition at a public hearing. Soon afterward, the Village publicly revealed that it planned to acquire the golf course, and later did so. In addition, one of the parcels was allegedly bought by individuals "closely aligned with certain of the Village's officials."

Village of Bloomingdale, 752 N.E.2d at 1094. CDG did not, however, claim that the Village itself acquired any of the five parcels. Village of Bloomingdale, 752 N.E.2d at 1094.

CDG sought damages, alleging that the "Village deliberately frustrated CDG's business expectancy by secretly working to force CDG out of the planned development." Village of Bloomingdale, 752 N.E.2d at 1094-95. CDG alleged that the Village "planned all along to develop the adjoining golf course and help cronies of certain Village officials purchase one of the five parcels." Village of Bloomingdale, 752 N.E.2d at 1094. The Village moved to dismiss CDG's claims based upon the Tort Immunity Act. The trial court dismissed the claims, but the Illinois Appellate Court, Second District, reversed. The Appellate Court held that the general grants of immunity afforded by the Tort Immunity Act are limited by the common law exception for "corrupt or malicious motives." Village of Bloomingdale, 762 N.E.2d at 1095.

The Illinois Supreme Court reversed the Appellate Court and affirmed the circuit court judgment dismissing CDG's claims. The court carefully analyzed the history of the Tort Immunity Act and the case law construing it. The court noted that "the tort liability of a local public entity or employee is expressly controlled both by the constitutional provision and by legislative prerogative as embodied in the Tort Immunity Act." Village of Bloomingdale, 752 N.E.2d at 1095. The court then noted that the "purpose of the Tort Immunity Act is to protect local public entities and public employees from liability arising from the operation of government." Village of Bloomingdale, 752 N.E.2d at 1095-96. The court conducted a careful review of its prior precedent and noted that, under § 2-201, a public employee is immune from liability for willful and wanton misconduct. Village of Bloomingdale, 752 N.E.2d at 1097, citing In re Chicago Flood Litig., 680 N.E2d 265 (Ill. 1997) and Harinek v. 161 N. Clark Street Ltd. P'ship, 692 N.E.2d 1177 (Ill. 1998).

The court in Village of Bloomingdale then noted that CDG was asking the court to impose the common law exception for "corrupt or malicious motives" onto provisions of the Tort Immunity Act. The court stated:

> Based on the foregoing precedent, we think it obvious that, just as the Act does not contemplate an exception to immunity for "willful and wanton misconduct," unless it expressly provides for such, the Act does not implicitly contemplate the common law exception for "corrupt or malicious motives."

Village of Bloomingdale, 752 N.E.2d at 1097-98. The court stated that "because the plain language of these provisions [including § 2-201] does not contain an exception for 'corrupt or malicious motives,' we will not insert one." Village of Bloomingdale, 752 N.E.2d at 1098. The court went

on to state that the "Village's denial of CDG's rezoning petition is precisely what the legislature intended to immunize such entities from." Village of Bloomingdale, 752 N.E.2d at 1099. The court further stated that, "whether the Village denied the petition through an 'abuse of official process and power,' through 'corrupt and malicious misuse of power,' or for 'corrupt and malicious motives,'" was wholly immaterial because the applicable statute did not contain an exception for "willful and wanton misconduct" or "corrupt or malicious motives." Village of Bloomingdale, 752 N.E.2d at 1099.

The court in Village of Bloomingdale also rejected CDG's contention that the Village was not immune from liability under the Tort Immunity Act because it was not performing discretionary tasks but, instead, improperly performed ministerial tasks for which it could not claim immunity. Village of Bloomington, 752 N.E.2d at 1099-1100. The court explained:

> Official action is judicial where it is the result of judgment or discretion. Official duty is ministerial, when it is absolute, certain and imperative, involving merely the execution of a set task, and when the law which imposes it, prescribes and defines the time, mode and occasion of its performance with such certainty, that nothing remains for judgment or discretion.

Village of Bloomingdale, 752 N.E.2d at 1099, quoting Chicago Flood, 680 N.E.2d at 272.

In this case, there is no question that Hamilton, as City Manager for the City of Bloomington, is a "public employee serving in a position involving the determination of policy or the exercise of discretion" under § 2-201 of the Tort Immunity Act. This court further concludes that Village of Bloomingdale is dispositive on the issue raised in this case. Here, Plaintiff alleged that Hamilton

engaged in "secret" meetings and caused the City to rescind its Arena Agreement with Plaintiff and enter into agreements favorable to Butler and Nelson and unfavorable to Plaintiff. This court is at a loss as to how these allegations are materially different from CDG's allegations in Village of Bloomingdale that the Village "secretly met" with individuals to create opposition to CDG's development plan for the five parcels and voted down CDG's request for rezoning to "help cronies of certain Village officials purchase one of the five parcels."

In Village of Bloomingdale, CDG argued that the Village engaged in this conduct for "corrupt or malicious motives" and an exception should be read into the Tort Immunity Act for that kind of conduct. As noted, the court in Village of Bloomingdale held that no such exception exists. In this case, Plaintiff argues that Hamilton was acting, not for the benefit of the City, but for the benefit of Butler and Nelson. However, Plaintiff has cited no case law which has accepted this type of exception to § 2-201 of the Tort Immunity Act and this court sees no real difference between this argument and an argument that Hamilton acted with "corrupt or malicious motives." Moreover, based upon Village of Bloomingdale, it is clear that the allegations of Plaintiff's First Amended Complaint show that Hamilton, in causing the City to rescind the Arena Agreement with Plaintiff and enter into other agreements favorable to Butler and Nelson, was acting with judgment or discretion and was not engaging in a ministerial task that was "absolute, certain and imperative, involving merely the execution of a set task." See Village of Bloomingdale, 752 N.E.2d at 1099.

Based upon Village of Bloomingdale, this court concludes that Hamilton is immune from liability under § 2-201 of the Tort Immunity Act. Accordingly, his Motion to Dismiss Count IV, V and VI of the First Amended Complaint (#52) is hereby GRANTED.

II.  BNAM AND HUNDMAN'S MOTION TO DISMISS

In his Report and Recommendation (#67), the Magistrate Judge accepted the argument of Defendants BNAM and Hundman that Count V should be dismissed because Plaintiff could not state a claim for tortious interference with contract based on the law of the case doctrine. The Magistrate Judge noted that this court, in ruling on Plaintiff's motion for a temporary restraining order and preliminary injunction, concluded that "the Management Agreement never became an enforceable agreement" between Plaintiff and the City. The Magistrate Judge concluded that, consistent with this court's reasoning in its previous order, Plaintiff's allegations that the Arena Agreement constituted a valid enforceable agreement between Plaintiff and the City were not well-pleaded in light of the evidence provided by the attachments.

In its Objection to Report and Recommendation (#68), Plaintiff argued that this conclusion was incorrect because this court's interlocutory order ruling on the motion for a temporary restraining order and preliminary injunction was not a ruling on the merits of the case and cannot be relied upon as the "law of the case." Plaintiff further argued that many of the exhibits this court relied upon in ruling on the motion for a temporary restraining order and preliminary injunction were not attachments to the First Amended Complaint and could not properly be considered in ruling on a Motion to Dismiss.

This court agrees with Plaintiff that this court's Order ruling on the motion for a temporary restraining order and preliminary injunction was not a final determination on the merits on any claims. See Dupuy v. Samuels, 423 F.3d 714, 721-22 (7th Cir. 2005) ("court stopped significantly short of deciding definitively any aspect of the case"). In its Order, this court discussed the issue of whether there was a valid enforceable contract in order to determine whether Plaintiff had shown a likelihood of success on the merits. This court ultimately concluded that Plaintiff did not show

9

a likelihood of success on the merits and was not entitled to a temporary restraining order or preliminary injunction. However, this was not a final determination on the issue of whether a contract existed. This court fully agrees with United States District Judge Joan B. Gottschall's statement in <u>Loewen Group Int'l, Inc. v. Haberichter</u>, 1998 WL 603050 (N.D. Ill. 1998). Judge Gottschall stated:

> The law of the case doctrine does not prohibit a court from reconsidering findings and conclusions from a preliminary injunction hearing. The findings and conclusions for a preliminary injunction are, by their nature, preliminary.

<u>Loewen Group</u>, 1998 WL 603040, at *2. This court notes that, under Rule 65(a)(2), a court may order the trial on the merits consolidated with the hearing on the application for injunctive relief. Fed R. Civ. P. 65(a)(2). However, this court did not order a consolidation of the hearing in this case, and a hearing on the merits has not been held. See <u>Dupuy</u>, 423 F.3d at 722 n.2; <u>Loewen</u>, 1998 WL 603040, at *2.

In this case, Plaintiff has alleged in Count V that BNAM and Hundman intentionally interfered with a valid enforceable contract between the City and Plaintiff. No final determination has been made in this case regarding the existence of a valid enforceable contract, and this court therefore concludes that BNAM and Hundman have not shown that they are entitled to dismissal of Count V of Plaintiff's First Amended Complaint. Accordingly, their Motion to Dismiss (#54) is DENIED in its entirety.

IT IS THEREFORE ORDERED THAT:

(1) The Report and Recommendation ( #66) filed by the Magistrate Judge on November 22, 2005, is not accepted by this court.

(2) Defendant Hamilton's Motion to Dismiss Counts IV, V and VI of the First Amended Complaint (#52) is GRANTED.  Counts IV, V and VI are dismissed, with prejudice, as to Defendant Hamilton.  Defendant Hamilton is terminated as a party to this action.

(3) The Report and Recommendation (#67) filed by the Magistrate Judge on November 23, 2005, is accepted in part and rejected in part by this court.

(4) The Motion to Dismiss Counts IV, V and VI (#54) filed by Defendants BNAM, LLC and Larry Hundman is DENIED in its entirety.

(5) The duplicate motion to dismiss docketed as #55 is hereby STRICKEN.

(6) This case is referred to the Magistrate Judge for further proceedings.

ENTERED this 23rd day of December, 2005

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE